Hon. Thomas F. Hartnett Director Governor's Office of Employee Relations
Your counsel informed us that the Civil Service Employees Association, Inc. (CSEA) wishes the State to agree to a voluntary payroll deduction plan for the benefit of CSEA's political action committee, COPE. Under the plan, the Comptroller, upon receiving an employee's payroll deduction authorization card, would process the salary deduction and forward the funds collected to COPE, which would use the funds for Federal election campaigns. Your counsel has asked two questions regarding this payroll deduction proposal: whether it is prohibited by section 107(3) of the Civil Service Law, and if so, whether the Federal Election Campaign Act would preempt the State law's operation.
Civil Service Law, § 107(3) provides that
 "No officer or employee of the state or any civil division thereof shall, directly or indirectly, use his authority or official influence to compel or induce any other officer or employee of the state or any civil division thereof, to pay or promise to pay any political assessment, subscription or contribution. Every officer or employee who may have charge or control in any building, office or room occupied for any governmental purpose is hereby authorized to prohibit the entry of any person, and he shall not knowingly permit any person to enter the same for the purpose of making, collecting, receiving or giving notice therein, of any political assessment, subscription or contribution; and no person shall enter or remain in any such office, building or room, or send or direct any letter or other writing thereto, for the purpose of giving notice of, demanding or collecting a political assessment; nor shall any person therein give notice of, demand, collect or receive any such assessment, subscription or contribution. No person shall prepare or take any part in preparing any political assessment, subscription or contribution with the intent that the same shall be sent or presented to or collected of any officer or employee subject to the provisions of this chapter, and no person shall knowingly send or present any political assessment, subscription or contribution to or request its payment of any said officer or employee. * * *"
Violations of any of the provisions of section 107(3) are a misdemeanor.
The language of section 107(3) is virtually indistinguishable from that found in the original prohibition against political assessments (L 1983, ch 354, § 11). This earlier version of section 107(3) was intended to eradicate a pervasive abuse of the patronage system whereby public employees would be coerced into contributing a part of their salary to partisan political causes (2d Annual Report of the Civil Service Commission, N Y Assembly Doc, 1885, No. 42, p 31). Section 11's purpose was to abate this evil and thereby "protect public officials from being the prey and the instruments of partisan managers" (ibid.). Section 107(3) has been similarly described: as protecting "public employees from being coerced into paying political contributions" (People v Haff,47 N.Y.2d 695, 700 [1979]). By its terms, section 107(3) accomplishes this purpose by prohibiting officers and employees of the State from using their positions to compel or induce a political contribution and by prohibiting the soliciting or collecting of political contributions in areas occupied for governmental purposes. Section 107(3) proscribes "the giving within a building occupied for governmental purposes by a public officer to his subordinates of notice that they are to collect and receive political contribution * * * Limited as to place, its regulation of speech is reasonable" (People v Haff, 53 N.Y.2d 997 [1981]). This law prohibits payments,
 "even unsought, if made and taken in a State or municipal office, especially if paid to an official superior. The influence of such position is not less effective if silently exerted. The limits by these statutes to contributions asked, or payments made within the building or room of the city or State, are presumably due to what were deemed the reasonable and constitutional freedom of citizens in private life. * * * Our statutes, therefore, would keep such contributions purely voluntary, as from citizens in private life, which character they cannot have if paid over at official desks in city bureaus." (People v Connolly, 168 App. Div. 919 [2d Dept, 1915].)
Consequently, section 107(3) would not appear to preclude public employees from making wholly voluntary political contributions if not solicited or collected in governmental offices.*
Section 107(3) of the Civil Service Law should also be construed in conjunction with Election Law, § 17-156. Section 17-156 prohibits an officer or employee of the State from using his authority or official influence to compel or induce another officer or employee to pay or promise to pay any political assessment. It further provides that this prohibition is not to be "deemed to prohibit an officer or employee of the state * * * from making a voluntary contribution to a candidate or political committee". The prohibition of section 17-156 is substantively the same as the first portion of section 107(3) and is a clear indication that the Legislature did not intend that this prohibition preclude a voluntary political contribution by a State officer or employee. While section 107(3) is more expansive through its prohibition of solicitations and collections in governmental offices, in our opinion it seems clear from the history and construction of this section that this is a further effort to protect officers and employees from coercion which may inherently be present when such activities occur in governmental offices.
You have not detailed the mechanics of the proposed payroll deduction program. We have stated that section 107(3) of the Civil Service Law prohibits the use of coercion by officers and employees to solicit contributions and prohibits solicitations and collections at governmental offices. It does not, in our opinion, prohibit voluntary contributions that are not solicited or collected at governmental offices. A payroll deduction plan whereby, for example, employees are notified at their residences of the existence of the plan, are informed of the purpose for which collected funds will be used, are informed that the election to contribute is entirely voluntary and are given forms whereby they may authorize the State Comptroller to make the desired deductions from their salary would appear to be a voluntary contribution not prohibited by section 107(3). However, if distributed to employees at the workplace, the question arises whether there has occurred a collection or solicitation or whether notice of a political assessment has been given in violation of section 107(3).
The Federal Election Campaign Act (FECA) permits labor organizations to use payroll deductions for making voluntary contributions to a separate segregated fund established for political purposes in relation to Federal election campaigns (2 U.S.C. § 441b; 11 C.F.R. § 114.1[f],114.5[k] and [1]). Under FECA, there is no requirement that an employer institute a payroll deduction program but the employer may institute such a program by agreement with a union (11 C.F.R. § 114.5[1]). (However, if the employer offers a payroll deduction program to its management or stockholders, it is required to also offer the program to a union representing its employees [ibid.].) It is required under FECA that in any solicitation for a voluntary contribution (including a solicitation for a payroll deduction plan) the employee must be informed of the political purpose of the fund and that the employee has the right to refuse to contribute without any reprisal (2 U.S.C. § 441b[b][3];11 C.F.R. § 114.5[a]).
FECA authorizes the solicitation of union members at the workplace for participation in a payroll deduction plan ( 11 C.F.R. § 114.5[k][3] and [4]). The provisions of FECA supersede and preempt any provision of State law with respect to election to Federal office (2 U.S.C. § 453). Thus, to the extent that section 107(3) of the Civil Service Law may prohibit the giving of notice at the workplace of a voluntary payroll deduction plan, we believe that FECA would supersede and preempt this restriction. However, we emphasize that the contribution must be voluntary ( 11 C.F.R. § 114.5[a]).
We conclude that a payroll deduction plan for voluntary contributions by State employees to their union's political action committee is not unlawful.
* In 1955, a proposal to amend section 107(3) to prohibit public employees from making political contributions was rejected (5th Interim Report of the Temporary State Commission on Revision of the Civil Service Law, N Y Legis Doc, 1955, No. 72, p 67).